IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 17-cv-00780-LTB

JERRY A. DUGWYLER

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

_____

ORDER
_____

    Plaintiff, Jerry A. Dugwyler, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in my determination. After consideration of the parties' briefs, as well as the administrative record, I AFFIRM the Commissioner's order.

## I. STATEMENT OF THE CASE

    Plaintiff seeks judicial review of the SSA Commissioner's decision that he was not disabled, as defined by the Social Security Act, during the closed period from January 25, 2010 through April 1, 2015. [Administrative Record "AR" 1135-59]

    Plaintiff filed an application seeking disability insurance benefits in June of 2011. [AR 188] After his application was initially denied, an Administrative Law Judge ("ALJ") held an evidentiary hearing, and issued a written ruling dated June

27, 2014. [AR 14-31]  The ALJ ruled that Plaintiff was not disabled because he was capable of performing work that existed in the national economy (Step Five). [AR 29]  The ALJ went on to determine that beginning on November 26, 2013, no jobs existed in the national economy that Plaintiff could perform and, as a result, Plaintiff became disabled on that date. [AR 30]

Plaintiff appealed that decision to this court and, on October 30, 2015, Judge Christine M. Arguello reversed. *Dugwyler v. Colvin,* No. 15-CV-00116-CMA, 2015 WL 13215658 (D. Colo. Oct. 30, 2015)(unpublished. [AR 1262-89]  Judge Arguello remanded the Commissioner's order on the basis that the ALJ erred when weighing the opinions of the physician opinions in the record.  Specifically, she found that the ALJ erred in "improperly considering the credibility of the [Plaintiff's] statements in assessing the opinions of treating sources[,] and he also erred in deciding the comparative or relative weight to which he should give the treating sources." *Id.*

On remand, the same ALJ held evidentiary hearings on June 7 and August 23, 2016, and issued a second written ruling dated December 28, 2016.  [AR 1135-59-31]  The ALJ again ruled that Plaintiff was not disabled because during the alleged closed period, from January 25, 2010 through April 1, 2015, Plaintiff was capable of performing work that existed in the national economy (Step Five). [AR 1157]  Plaintiff did not file written exceptions, and the SSA Appeals Council elected to not review the ALJ's determination, making the denial final for the purpose of judicial review. [AR 1323-28]  Plaintiff timely filed his complaint with this court seeking review of the Commissioner's decision.

2

## II. FACTS

Plaintiff was born on January 19, 1960; he has a B.A. in Economics and has completed a year of seminary graduate work. [AR 298, 310] Plaintiff has been employed as a maintenance supervisor, a corporate safety and compliance officer, a transportation manager, a telemarketer, and a truck driver. [AR 297] Plaintiff initially asserted that he became disabled in January of 2009 due to his coronary artery disease, social anxiety and depression. [AR 188-89, 298, 30] Plaintiff later amended his onset date to January 25, 2010, and Plaintiff admits that he returned to work on April 1, 2015. [AR 1176, 1187, 1135] Thus, it is undisputed that Plaintiff must prove he was disabled during the closed period of January 25, 2010 through April 1, 2015. Plaintiff's medical records and history are set forth in *Dugwyler v. Colvin*, *supra*, 2015 WL 13215658. [AR 1262-89] Again at issue here is the ALJ's assessment of the various medical opinions in the record.

## III. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II of the Social Security Act, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). Step One is whether the claimant is presently engaged in substantial gainful activity. If he is, disability

benefits are denied. *See* 20 C.F.R. § 404.1520. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that his impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the impairment is not listed, he is not presumed to be conclusively disabled. Step Four then requires the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC") prevent him from performing work that he has performed in the past. If the claimant is able to perform his previous work, the claimant is not disabled. *See* 20 C.F.R. § 404.1520 (e)&(f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps as discussed, the analysis proceeds to Step Five where the SSA Commissioner has the burden to demonstrate that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. *See* 20 C.F.R. § 404.1520(g).

## IV. ALJ's RULING

On remand, the ALJ ruled as follows:

After careful consideration of all the evidence, I conclude the claimant was not under a disability within the meaning of the Social Security Act during the alleged closed period of disability from January 25, 2010, to April 1, 2015. The claimant is not disabled from January 25, 2010, to January 24, 2015. Beginning January 25, 2015 (the

4

claimant's 55th birthday), the Medical-Vocational rules would have supported a finding of disability. However, the claimant has conceded medical improvement and a return to substantial gainful work activity less than 3 months later, on April 1, 2015. Thus, that period (from January 25, 2015 to April 1, 2015) is less than 12 months after the disability onset date. Consequently, disability cannot be established as that term is defined under Social Security law in terms of eligibility for Social Security disability payments. [AR 1136]

In so ruling, the ALJ found as follows. First, that Plaintiff had not engaged in substantial gainful activity during the closed period (from January 25, 2010 through April 1, 2015)(Step One). [AR 1137] The ALJ further determined that during the closed period, Plaintiff had the following medically determinable and severe impairments: 1) dysthymic disorder and/or depressive disorder; 2) anxiety disorder; 3) obesity; 4) peripheral neuropathy; 5) obstructive sleep apnea; and 6) coronary artery disease, with cor pulmonale (Step Two), but that these impairments did not meet or medically equal a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 1138]

The ALJ then determined that during the closed period of disability, Plaintiff's physical RFC was light work, as defined in 20 CFR 404.1567(b), in that he was able to lift 20 pounds occasionally and 10 pounds frequently and, during an 8-hour workday, he was able to stand and/or walk 4 hours and sit for 6 hours. He was limited, however, in that: he was able climb ramps and stairs occasionally; he should avoid climbing ladders, ropes, and scaffolds; and he should avoid all exposure to protected heights. He could frequently balance, bend, stoop, crouch, kneel, and crawl. Plaintiff's mental RFC was assessed as follows: he was able to

5

use judgment in making work decisions; respond appropriately to supervision, coworkers and work situations; and deal with changes in a routine work setting, but he should not perform any assembly-line work and could not engage in work requiring intense, sustained concentration. Plaintiff was also only able to interact with the public less than occasionally, was able to manage social situations that were not frequent or prolonged, and was capable of work that was of limited complexity that required only up to six months to learn. [AR 1140-41]

Based on this RFC assessment, the ALJ determined that Plaintiff could not perform his past relevant work during the closed period of disability (Step Four). [AR 1156] However, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform during the closed period of disability (Step Five). [AR 1157] Therefore, the ALJ found that during the closed period of disability (from January 25, 2010, to April 1, 2015), Plaintiff was not disabled at Step Five of the sequential evaluation process. [AR 1157-58]

## V. STANDARD OF REVIEW

This court's review is limited to whether the final decision of the SSA Commissioner is supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000). Thus, the function of my review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they

are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987)(*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d. 842 (1971)). I may not re-weigh the evidence or substitute my judgment for that of the ALJ. *See Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981).

With regard to the application of the law, reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI. APPEAL

On appeal, Plaintiff contends that the ALJ erred when weighing the opinions of his treating sources in the RFC assessment; specifically, the ALJ erred in failing to give the treating opinions controlling weight and instead assigning more weight to the opinions of the state consultive examiners.

### A. Treating Source Opinions

Ms. Ellen Rosenberg, M.Ed LPC, was Plaintiff's therapist for six months, from June to December of 2011. [AR 781-90, 795] Ms. Rosenberg filled out a Mental Impairment Questionnaire form on March 22, 2012, indicating that Plaintiff

7

experienced pervasive loss of interest in almost all activities, decreased energy, impairment in impulse control, persistent disturbances in mood, paranoid thinking, easy distractibility, memory impairment, sleep disturbances, isolation, recurrent severe panic attacks, and paranoid thinking, among other things, as a result of his anxiety and depression. [AR 795-8]  Accordingly, Ms. Rosenberg opined that Plaintiff's functional limitations were moderate restrictions in activities of daily living, deficiencies of concentration, persistence or pace, and marked restrictions in difficulties in maintaining social functioning.  She opined that he could be expected to experience three repeated episodes of decompensation within a twelve-month period, and that he would miss approximately three days of work per month. [AR 797-98]

Plaintiff then saw Dr. Leon Que, M.D., a psychiatrist, on May 4, 2012, for a General Psychiatry Evaluation, and then met with Dr. Que three times in January and February of 2013. [AR 974-82]   During the initial evaluation, Dr. Que noted Plaintiff's complaints of depression, and assessed Plaintiff with a score of 28/30 on a mini-mental status examination.  Dr. Que diagnosed the claimant with major depressive disorder, recurrent, severe, and assessed a GAF score of 55. [AR 979-82]  Dr. Que cleared Plaintiff for gastric bypass surgery, but did not provide an opinion as to his limitations or his ability to work. [AR 1155]

Also at that time, starting in April 2012, Plaintiff began seeing psychologist Dr. Heidi Ardern, Ph.D.  He saw Dr. Ardern from April to June of 2012, and then again from November 2012 to approximately April of 2014. [AR 988, 1172]  Dr.

8

Ardern filled out a Mental Impairment Questionnarie form on March 12, 2013, noting Plaintiff's depressed mood, loss of interest, decreased motivation, social anxiety, and low self-confidence. [AR 988-92] Dr. Ardern also indicated that Plaintiff experienced cognitive slowing and psychomotor retardation. [AR 988] She opined that Plaintiff's prognosis was fair, but that relapse of symptoms throughout his lifetime was a probability. [AR 989] Dr. Ardern's opinion was that Plaintiff's functional limitations were: moderate restrictions in activities of daily living, marked difficulties in maintaining social function, and marked deficiencies of concentration persistence or pace. [AR 990] She opined that Plaintiff's symptoms would frequently interfere with his ability to maintain attention and concentration, and that he would likely miss about four work days per month due to his mental health problems. [AR 991] In a follow up letter, Dr. Ardern explained that Plaintiff's GAF score of 60 was consistent with a marked lack of functioning and concentration, persistence, and pace. [AR 1000] She clarified that Plaintiff's social functioning varied from moderate difficulties to marked difficulties, depending the situation, and with the more severe level of his depression, his psychological and social functioning were markedly impaired. In addition, she believed that his concentration, persistence, and pace would be affected by the severity of his depressive symptoms and social anxiety. Finally, she opined that Plaintiff was able to maintain focus and pace to complete tasks, but in a work setting his concentration, persistence, and pace would suffer. [AR 1000]

With regard to his physical limitations, Plaintiff saw Dr. Peter Kriekard,

M.D., a cardiologist, beginning in June of 2012. [AR 983] In a Cardiac Residual Functional Capacity Questionnaire form, dated March 8, 2013, Dr. Kriekard indicated that Plaintiff's anginal pain occurred a few times per month, particularly with exertion, and opined that his physical symptoms and limitations caused him to experience depression. [AR 983-87] Dr. Kriekard opined that Plaintiff could lift ten to twenty pounds occasionally, and should never lift fifty pounds, and that he could stand/walk for less than two hours and could sit for at least six per day, as long as he could shift positions at will, in an eight-hour work day. [AR 985-6] He also indicated that Plaintiff should never climb stairs or ladder, and that he could be expected to miss about one day per month of work. [AR 986-87]

### B. Consultive Source Opinions

On December 28, 2011, Dr. Martin Wong, Psy.D., a State Agency Psychological Examiner, examined Plaintiff and conducted a Psychiatric Evaluation. [AR 700-03] Dr. Wong assessed Plaintiff as unremarkable in the areas of Appearance/Behavior, Communication Skills/Speech, Thought Processes and Sensorium Cognition, but noted that his Mood/Affect revealed a generally dysthymic mood and his affect was blunted. [AR 702] Dr. Wong's tentative diagnostic impression was Dysthymic Disorder with Anxiety, and he assigned Plaintiff a GAF of 60. [AR 703] Dr. Wong opined that Plaintiff was intelligent, was "able to perform mathematical operations without too much difficulty," and he "certainly could follow one and two step instructions." [AR 703]

On January 12, 2012, Dr. Paul Barrett, M.D., a State Medical Consultant,

reviewed Plaintiff's available medical records and opined that Plaintiff could lift ten pounds, stand or walk for four hours and he could sit six hours in an eight-hour day, but he could only climb ramps and stairs occasionally. [AR 103-114]

On January 30, 2012, Dr. Gayle Frommelt, Ph.D., a State Mental Health Consultant, conducted a medical records review and concluded that Plaintiff maintained the ability to do work of limited complexity that could be learned in six months time. Additionally, she opined that Plaintiff could manage social interactions that were not frequent or prolonged, but would do best with minimal contact with the general public. [AR 114-15]

On February 15, 2016, Dr. William H. Graham, M.D., a psychiatrist, filed out a Medical Source Statement of Ability to Do Work-Related Activities (Mental) form. [AR 1175-79] He opined that Plaintiff had, at most, mild limitations in all areas of mental functioning. [AR 1475] His accompanying Psychiatric Evaluation revealed mild impairments in Plaintiff's ability to understand, social functioning and adaptation. [AR 1480-84] As noted by the ALJ, Dr. Graham's opinion is consistent with the fact that Plaintiff had returned to full-time work by this time. [AR 1155]

## C. Analysis

Plaintiff first argues that the ALJ's decision to not give his treating source opinions as to his mental and physical limitations during the closed period (from January 25, 2010 through April 1, 2015) controlling weight constituted error. Specifically, he argues that the ALJ again failed to identify any substantial evidence in the record that contradicts the opinions of Plaintiff's treating

11

physicians; rather, the order merely sets out boilerplate language that fails to identify inconsistent evidence sufficient to discount his treating source opinions.

The ALJ ruled as follows when assessing the medical opinions from the treating sources in the record:

> When determining whether to assign *controlling* weight to the opinions a given medical source, I consider only the opinions of medical sources who have actually treated the claimant. They are classified as 'treating sources' in the regulations. Only the opinions of treating sources are eligible by regulation to receive controlling weight.
>
> The record in this case contains treating source opinions about the claimant's functional capacity. Consequently, I considered whether I should give controlling weight to the opinions of any of the claimant's treating sources.
>
> In addressing the issue of controlling weight, I must consider whether the regulatory requirements have been satisfied. According to the regulation, in order for the opinions of a treating source to receive controlling weight, they must satisfy two requirements. First, they must be 'well-supported by medically acceptable clinical and diagnostic techniques.' Second, they must be 'consistent' with 'the other substantial evidence' in the record. The evidence the regulation refers to is medical evidence, and the medical evidence may include may include the opinions of other treating sources as well as the opinions of non-treating medical sources. Included among the non-treating sources are Consultative Examiners, Medical Experts, and State and Regional Agency medical and psychological consultants.
>
> In this case, other medical sources have indeed provided opinions about the claimant's functional capacity. The record includes opinions from at least one State Agency medical consultant about he claimant's functional capacity. Those opinions concluded that the claimant's limitations would not preclude the performance of substantial gainful activity. In addition, the record includes opinions from at least one Consultative Examiner about the claimant's functional capacity. Those opinions also concluded that the claimant's limitations would not preclude the performance of substantial gainful activity.

> The medical source opinions I have just summarized constitutes the 'other substantial evidence' mentioned in the regulation. In this case, then, the treating source opinions are not 'consistent' with 'the other substantial evidence' in the record. Thus, one of the requirements of the regulation is not satisfied. Consequently, I find that the treating source opinions are not entitled to receive controlling weight. [AR 1150-51]

While this language primarily provides generalized standards for applying controlling weight, the ALJ's order goes on to address the specific individual opinions when assessing the relative weight of these conflicting opinions. As to the weight given to the opinions of Plaintiff's treating sources, the ALJ found that the nature, extent and length of the treating relationship with Dr. Kriekard, Dr. Ardern, and Ms. Rosenberg, gave their opinions more weight. [AR 1153] The ALJ ultimately gave more weight to the opinions from consultive sources, however, on the basis that the providers had expertise in evaluating disability claims, their opinions were more consistent with the longitudinal record as a whole, they provided more relevant supporting medical evidence and better explanations in support of their opinions, and they were more familiar with Plaintiff's medical records. [AR 1153-54]

In so doing, the ALJ provided the following additional reasons for giving less relative weight to Plaintiff's treating sources.

> I give less weight to the opinions of Dr. Arde[r]n for the following additional reasons. First, they are inconsistent with her own records. For example, Dr. Arde[r]n opined that the claimant has 'marked' difficulties in maintaining social functioning, and 'marked' deficiencies in concentration, persistence or pace (Exhibit 20F, p. 3); and that the claimant's symptoms would cause him to be absent about four days a month (Exhibit 20F, p. 4). However, just 5 days previously, Dr. Arde[r]n had an office appointment with the claimant, and afterward reported in her notes that the claimant's 'depression symptoms remain minimal' (Exhibit 20F, p. 6).

13

Second, Dr. Arde[r]n, along with Ms. Rosenberg, have opined that the claimant is not malingering (Exhibits 13F, p. 5; 20F, p. 4). These opinions, however, are deficient. They do not satisfy the regulatory requirement that medical opinions must be 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.' An opinion offered on the subject of malingering is treated the same as any other opinion, i.e., it must be supported by objective clinical data. Regarding the subject of malingering, objective clinical data is available from the results of specific testing, called validity testing. Generally accepted validity tests are available to assess the presence and degree of demonstrated effort, the consistency of effort, and other matters related to symptom magnification and/or malingering.

To determine the basis of these opinions, I have reviewed the medical records to locate supporting documentation – i.e., objective clinical data. However, there is no mention that any medical source performed or conducted any validity testing. Nor, for that matter, is there any mention that any medical source reviewed any results of any validity testing conducted by any other health care professional.

Consequently, I conclude that such an opinion is not 'well-supported' by any objective clinical data. Indeed, the opinion is not supported at all by any objective clinical data. Moreover, the fact that these medical sources have given such an unsupported opinion undermines the weight to he given to the other opinions of these medical sources as well. Thus, for this reason I give less weight to the opinions of these medical sources.

Third, I give less weight to the opinions of Dr. Arde[r]n, because the record suggests that her opinions were based on inconsistent information. For one example, Dr. Arde[r]n signed a [Mental Impairment Questionnaire] and a letter in March 2013 (Exhibits 20F, 21F), saying how depressed the claimant was. However, 2 months earlier, the claimant told another mental health professional that 'I'm out of the depression' (Exhibit l 8F, p. 3). For another example, the record indicates that during the period that this medical source opined about the claimant's condition, the claimant worked full-time for a number of months in the third quarter of 2011 (Exhibit 9D, p. 4), and applied to work at office and clerical jobs (testimony).

Moving to another medical source, I give less weight to the opinions of Dr. Kriekard for the following additional reason. The record suggests that the opinions of this medical source were based on incomplete

14

> information. For example, Dr. Kriekard signed a [Cardiac Residual Functional Capacity Questionnaire] for physical conditions in March 2013 (Exhibit 19F, p. 5), and the medical records suggest that the last time he saw the claimant was in July 2013 (Exhibit 26F, p. 18). Subsequent to that last examination, however, the medical records suggest that the claimant's physical condition improved. For example, in August 2013 a treating source reported that the claimant was 'doing well' (Exhibit 26F, p. 55). In February 2014, another treating source made a similar comment (Exhibit 26F, p. 66). The next month, a treating source remarked that the claimant was 'doing well overall' (Exhibit 26F, p. 84). Finally, the next year, in February 2015 (a few months before the claimant returned to work full-time at substantial gainful activity) a medical source reported that 'overall he is doing very well' (Exhibit 26F, p. 132).
>
> . . .
>
> In conclusion, I have stated in the paragraphs above the weight factors I considered in assessing the medical source opinions. Within each weight factor, I assessed the weight to give each medical source. After processing the individual weight factors, I determined the <u>overall</u> relative weight to assign to each medical source. As a result, I have assigned the overall relative weight to each medical source opinion as follows. I give less weight to the opinions of Ms. Rosenberg and Drs. Kriekard and Arde[r]n. I give some weight to the opinions of Drs. Que and Graham. I give more weight to the opinions of Drs. Barrett, Frommelt, and Wong. Finally, the weight I have assigned is supported by the regulatory factors I have applied, as well as the objective medical evidence in the record. [AR 1154-56]

The reasons provided by the ALJ constitute sufficient and substantial evidence to support his determination to not give Plaintiff's treating source opinions controlling weight, and instead giving more weight to the opinions of the consultive sources in this case. *See* 20 C.F.R. § 404.1527(c)(2)(requiring an ALJ to give "good reasons in [the] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion"); Social Security Ruling ("SSR") 96–2P, 1996 WL 374188 (1996)(indicating that the ALJ's findings "must be sufficiently specific to

make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ here heeded Judge Arguello's direction that, on remand, he identify substantial medical evidence that supported his decision that the opinions of the consultive sources outweighed the treating physicians opinions in order to decline assigning those opinions controlling weight. *See Dugwyler v. Colvin, supra,* 2015 WL 13215658. [AR 1262-89]

I also reject Plaintiff's related argument that the ALJ applied an incorrect legal standard. The applicable regulation provides that in order for the opinions of a treating source to receive controlling weight, those opinions must be both: 1) well-supported by medically acceptable clinical and diagnostic techniques, and 2) "not inconsistent with the other substantial evidence in [Plaintiff's] case record." 20 C.F.R. §404.1527(c)(2); SSR 96-2P. The ALJ's order indicates that the second requirement is that the opinions "must be 'consistent' with 'the other substantial evidence' in the record" [AR 1150] which, Plaintiff argues, is not the same as "not inconsistent with the other substantial evidence" as mandated by the regulation. First, the ALJ's order acknowledges, in footnote, that "[t]he actual wording is 'not inconsistent.'" [AR 1150, FN 10] Furthermore, "not inconsistent" is defined as a "term used to indicate that a well-supported treating source medical opinion need not be supported directly by other evidence (*i.e.*, it does not have to be consistent with all of the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96–2P; *see also*

16

*Garcia v. Colvin*, 219 F. Supp. 3d 1063, 1071 (D. Colo. 2016)(noting that the distinction between "not inconsistent" and "consistent" requires that "[t]he treating source opinions should not be accorded controlling weight if they contradict other substantial evidence in the record, but they do not necessarily have to reach the exact same conclusions.") As discussed above, the ALJ here identified and relied upon other substantial evidence in the case record that contradicts or conflicts with the treating source opinions. Therefore, the ALJ's order not only set forth the correct legal standard – by indicating that the applicable language was "not inconsistent" in footnote 10 – but reveals that he correctly applied term by finding the treating source opinions were contradicted other substantial evidence in the record (not that they reached the exact same conclusions). *Garcia v. Colvin, supra*, 219 F. Supp.3d at 1071; *see also Richards v. Berryhill*, 2017 WL 5664511 (D. Colo. Nov. 27, 2017)(unpublished)(finding that the ALJ's conclusion that the treating sources' opinions do not merit controlling weight was supported by substantial evidence, and the ALJ applied the correct legal standards when noting in a footnote the actual wording of the regulations was "not inconsistent.")

Finally, I address Plaintiff's argument that the ALJ "inappropriately" assigned more weight to the opinions of the consultive examiners because the ALJ did not properly analyze the factors, set forth in the SSA regulations, used to determine relative weight of the conflicting medical opinions.

If the ALJ determines that the treating source opinions are not entitled to controlling weight, the ALJ must next consider whether those opinions should be

17

rejected altogether, or assigned some lesser weight. *Watkins v. Barnhart, supra,* 350 F.3d at 1300. In order to properly weigh such opinions, the ALJ applies the following factors provided in 20 C.F.R. § 404.1527:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.; Watkins v. Barnhart, supra,* 350 F.3d at 1301 (quotations omitted). An ALJ is not required, however, "to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Plaintiff argues that the ALJ erred in his comparative weight analysis because he either failed to apply a factor, or his analysis of the factor was insufficient. Specifically, Plaintiff asserts that the ALJ did not mention two of the factors (the sources' examining relationship or their specialization) and that his discussion of the other factors lacked analysis tied to the record and, thus, was non-specific and conclusory. And, as such, he argues that the ALJ failed to provide good reasons for the weight assigned to the conflicting opinions.

As set forth above, the ALJ in this case gave less weight to the opinions provided by Ms. Rosenberg and Drs. Kriekard and Ardern, more weight to Drs. Que and Graham's opinions, and more weight to the opinions of Drs. Barrett, Frommelt,

and Wong. [AR 155-56] The ALJ explained that he considered the regulatory factors of 20 C.F.R. §404.1527(c) as well as the objective medical evidence in the record in making his decisions. [AR 1156]

The ALJ applied the correct legal standards in assigning the conflicting medical opinions relative weights. And, contrary to Plaintiff's assertion, I conclude that the ALJ's decision as to the weight given to the medial opinions, after remand, was based on contradictory substantive medical evidence, within a detailed analysis of the relevant factors, sufficient to support the comparative relative weight assigned to those opinions. *Dugwyler v. Colvin, supra*, 2015 WL 13215658.

ACCORDINGLY, for the foregoing reasons, I AFFIRM the Commissioner's final order.

Dated: June 14, 2018 in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock          
LEWIS T. BABCOCK, JUDGE